Jason B. Lattimore
**The Law Office Of**
**JASON B. LATTIMORE, ESQ. LLC**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 998-7477
Facsimile:  (973) 264-1159

*Attorneys for Plaintiff,*
*Interlink Products International, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INTERLINK PRODUCTS INTERNATIONAL, INC., | Case No: |
| Plaintiff, | |
| v. | **COMPLAINT &**<br>**JURY TRIAL DEMAND** |
| CATHY TRADING, LLC (d/b/a WANTBA), | |
| Defendant. | |

Plaintiff, Interlink Products International, Inc. (hereinafter "Interlink" or "Plaintiff"), by and through its undersigned attorney, hereby complains of Defendant, Cathy Trading, LLC ("Defendant"), as follows:

### THE PARTIES

1.      Plaintiff is a New Jersey corporation with its principal place of business at 1315 East Elizabeth Avenue, Linden, NJ 07036.

2.      On information and belief, Defendant is a Maryland limited liability company with its principal place of business at 150 Lullaby Lane, Germantown, Maryland 20874.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the claims alleged pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331, and also has jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) in that the state law claims alleged are so related to the claims over which the Court has original jurisdiction that they form part of the same case.

4.     This Court has personal jurisdiction over Defendant in that it does business regularly in this district and the claims at issue in this case arise out of or are related to Defendant's business activities with respect to this district.   On information and belief, Defendant regularly advertises, offers for sale, ships and sells, to customers located in New Jersey, products that are the subject of the claims in this Complaint.  On information and belief, Defendant directly or indirectly markets, advertises and sells the products at issue throughout the United States and in this judicial district, and this judicial district is a likely destination for the products that are the subject of this action.   Defendant thus purposely directs its business activities to this forum and the claims herein thereby arise out of and relate to such business activities.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## NATURE OF THE CLAIMS

6.     This case arises out of Defendant's willful and persistent efforts to compete unfairly in the market for showerhead products by misrepresenting the nature and qualities of its products.  Defendant sells its showerheads online on sites such as eBay.com and Amazon.com in direct competition with Interlink.  In an attempt to boost sales of its products and present its products as being superior to those of competitors, Defendant represents to customers that its showerheads are "high pressure" showerheads that nonetheless achieve an efficient and legally

compliant water flow rate of 2.5 gallons per minute when, in reality, its showerheads greatly exceed that flow rate.  Defendant has further misrepresented the performance and features of its products in violation of the law.  Through its unfair competition, Defendant has diverted sales from Interlink and caused Interlink significant competitive harm.  Interlink asserts claims against Defendant for false advertising under the Lanham Act, and for state statutory unfair competition and common law unfair competition.

## FACTS

7.     Plaintiff, Interlink, is a New Jersey research & development company specializing in the development, manufacturing and marketing of innovative consumer and professional healthcare products in the shower and bath, personal care and cleaning categories. The company was founded in 1996 and built on conceptual and technological innovation, high product quality and excellence in customer service.

8.     Interlink's products include several lines of showerheads that can be purchased from various online sources, including Amazon.com, where Interlink is one of the leading sellers of showerheads, as well as from major retailers.

9.     Defendant competes directly with Interlink in interstate commerce for sales of showerheads.

10.     The Energy Policy Act (42 U.S.C. §§ 6291-6309), and the regulations promulgated pursuant thereto (collectively the "EP Act"), require that all showerheads manufactured after January 1, 1994 have a maximum flow rate of "2.5 gallons per minute (9.5 liters per minute) when measured at a flowing pressure of 80 pounds per square inch ("psi") gage (552 kilopascals)." 10 CFR Part 430.32(p); 42 U.S.C. § 6295(j).  The EP Act also requires all

showerheads to "meet the requirements of ASME/ANSI A112.18.1M-1989, 7.4.3(a)" (42 U.S.C. § 6295(j)), which sets forth additional standards for showerheads and flow rate testing.

11.     42 U.S.C. § 6302(a) prohibits the distribution in commerce of showerheads that do not comply with the EP Act's energy conservation requirements.

12.     The flow rate restrictions and related requirements imposed by the EP Act were enacted to serve the important public interests of water conservation and environmental protection.

13.     Compliance with the flow rate restrictions of the EP Act impacts the characteristics of showerheads by limiting the amount of water expelled by the showerhead at a given water pressure over any given period of time.  Successful showerhead manufacturers, such as Interlink, sell products designed to achieve excellent performance when equipped with flow restrictors limiting water flow to 2.5 gpm.  The production of high-performing compliant products involves research and the expenditure of resources that, ultimately, increases the cost of such products.

14.     Interlink includes flow restrictors installed in each of the showerhead models it sells to limit the water flow rate of the showerheads to 2.5 gpm.

15.     Defendant, in contrast, intentionally deceives customers by advertising that its showerheads have 2.5 gpm flow rate when, in fact, none of them do.  Images reflecting Defendant's deceptive advertising is attached as Exhibit A. Defendant even advertises some of its showerhead products as achieving "high pressure" spray at only a 2.5 gpm flow when, in reality, Defendant's products operate at flow rates as high as 4.5 gpm and could never provide a high pressure water stream at 2.5 gpm.  Additionally, Defendant falsely promotes its HS010C model dual showerhead product as offering a "2.5 GPM Water Saving Spa Experience," even

4

though that product, in reality, has an excessive, high-water-consumption flow rate of 4.4 gpm at 75 psi of water pressure.  At 80 psi (the testing pressure specified under the EP Act), the flow rate would only be higher.

16.     Interlink tested, at 75 psi, each of Defendant's showerhead models it purchased, and found that each model had a water flow rate exceeding the legal limit of 2.5 gpm, with some reaching as high as 4.5 gpm.  None of the models had any type of flow restriction device installed to limit water flow.  Pictures of the samples of Defendants' showerheads purchased and tested by Interlink showing that they do not contain 2.5 gallon-per-minute flow restrictors, are attached as Exhibit B.

17.     Customer reviews of Defendant's products on Amazon.com provide several examples of individuals who were deceived into purchasing Defendant's products as a result of Defendant's deceptive conduct.  For instance, one reviewer wrote that Defendant's showerhead "uses at least two to three times as much water as my previous head," used "way too much water for daily use," and "is using way more water than it states**."**  Another lamented, "It had nice pressure however I'm used to having enough hot water for atlas (sic) a 30 min shower. This shower head took that down to 10-15min hot shower."

18.     Defendant's conduct is particularly egregious in light of the fact that, on November 5, 2015, Interlink sent Defendant a cease and desist letter notifying Defendant of its non-compliance with flow-rate laws.  A copy of the cease and desist letter is attached as Exhibit C.  Rather than comply with the law, Defendant instead expanded the number of high-flow-rate, illegal products it was selling and continued to lie about its flow rates in the materials promoting its products.    Thus, Defendant's unlawful actions were not the result of oversight or inadvertence, but rather, were calculated and intentional.

19.    With respect to one of its products, its Six-inch High Pressure showerhead, Defendant even began shipping the product with a sham flow restrictor separately included in the showerhead's packaging.  Interlink tested the flow restrictor shipped with Defendant's six-inch showerhead and found that it is not a 2.5 gpm restrictor, but rather, only reduced water flow in the product to 3.2 gpm at 75 psi, still well above the legal flow rate limit.  On information and belief, Defendant intentionally included a restrictor that would allow a high flow rate because it knew and knows that its product would not function well at 2.5 gpm.  Further, the restrictor was not and is not pre-installed in the product, as required by law, and Defendant does not provide any identification or instructions regarding the restrictor that might alert a purchaser to its significance or use.

20.    Manufacturers, such as Defendants, that sell illegal showerheads with no water flow restriction can gain an unfair competitive advantage over compliant manufacturers, such as Interlink, by (a) avoiding the cost of producing compliant showerheads that perform to levels acceptable to consumers, which allows them to sell at lower prices; and (b) by misleading consumers into believing that the showerheads they sell are competitive with or superior to showerheads with 2.5 gpm flow restriction (because the high water flow rate of their showerheads provides a better showering experience) when, in fact, the performance of their non-compliant showerheads is attributable to an unlawful, excessively high flow rate.

21.    Online product reviews are a key factor in consumer purchasing decisions online. Products with positive online reviews generally enjoy much higher sales and a stronger competitive position than those with less favorable reviews.  Defendants have inappropriately exploited the influence that online product reviews have on product sales by selling showerheads with flow rates so high that no law-abiding competitor could offer a comparable product and by

passing off their high-flow-rate showerheads as efficient, 2.5 gpm showerheads.  Because flow rate has such a profound impact on a user's showering experience, Defendant's practices lead, in most instances, to positive online product reviews.  That, in turn, exacerbates the impact of Defendant's deceptive and illegal conduct by inducing even more consumers to purchase the products, as opposed to products that are manufactured to comply with flow rate restrictions, such as Interlink's showerheads.  Defendant's objective through this conduct was and is to induce purchasers to write glowing reviews of its products so that online shoppers will choose Defendant's products over Interlink's.

22.    On information and belief, Defendants have sold a large number of showerheads through Amazon, eBay and other channels.  On information and belief, none of those showerheads comply with the EP Act's flow rate restrictions and all of them were represented to consumers as having 2.5 gpm flow rates when, in fact, their respective flow rates were much higher.

23.    Defendant continues to misrepresent the nature of its showerheads and to sell showerheads with excessively high flow rates in order to unfairly compete with Interlink.

24.    On information and belief, environmental compliance is material to a significant number of consumers who have purchased Defendants' showerheads.

25.    At all relevant times, Defendant knew or reasonably should have known that its showerheads did not comply with the EP Act, and that its representations regarding flow rate were false.

26.    In addition to misrepresenting the flow rates of its products, Defendant also falsely advertises its products as having "conical brass hose nuts for easy hand tightening" with "tools- free installation" even though at least one of the hose nuts shipped with Defendant's

7

products is a traditional nut designed to be tightened with a wrench, not by hand.  In contrast, Interlink's products that come with a hose actually have conical brass hose nuts and can be properly tightened by hand.  Defendant thus falsely markets its products as having a convenience feature that Interlink's products have, thereby directly harming Interlink.  In fact, by all appearances, Defendant copied the language at issue directly from Interlink's competing product listings with the intent to create the false appearance that Defendant offers the same features on its products as Interlink.

27.    Defendant's misrepresentations regarding the nature of its showerheads deceive consumers and unfairly enhance Defendant's market position and demand for their products. Further, the illegal, excessively high flow rates of Defendants' showerheads positively influence online customer reviews of the showerheads which, in turn, have the tendency to increase sales of Defendant's showerheads, reducing Interlink's sales and unfairly enhancing Defendant's ability to compete with Interlink for future sales.

28.    Through its unlawful misrepresentations and sale of illegal products, Defendant has unfairly enhanced its goodwill in the market and market position as compared to Interlink, has unlawfully deprived Interlink of sales and customer goodwill, and has otherwise unfairly competed with Interlink.

29.    Absent Defendant's unlawful misrepresentations and omissions, it was very likely that the consumers who purchased Defendant's products would have purchased Interlink's products.

**COUNT I**
**(False Advertising - 15 U.S.C. § 1125 (a))**

30.    Plaintiff restates and realleges the allegations of paragraphs 1-29 as if fully set forth herein.

8

31.     Through the foregoing conduct, including Defendant's (a) misrepresentations regarding its products' flow rates; (b) misrepresentation that its products achieve a high-pressure water spray at 2.5 gpm; (c) misrepresentation that its HS010C model dual showerhead is a "water saving" model; and (d) misrepresentations that its products feature "conical brass hose nuts" that can be hand tightened, Defendants made and continue to make false or misleading statements and omissions as to the nature and qualities of their showerheads and in the advertising or promotion of those showerheads.

32.     Defendant's false and misleading statements regarding their showerheads are literally false, deceived and continue to deceive consumers purchasing Defendant's showerheads, and otherwise have the tendency to deceive potential purchasers of Defendant's showerheads.

33.     The deception brought about by Defendant's false and misleading statements detailed in the preceding paragraphs was and is material in that those statements likely influenced and will continue to influence purchasing decisions concerning Defendant's showerheads.

34.     Defendant's goods travel in interstate commerce.

35.     Defendant's deceptive conduct has caused and will continue to cause immediate and irreparable injury to Interlink, including declining sales, unfair price competition and loss of market share, for which there is no adequate remedy at law.

36.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorneys' fees, costs and any other relief the court deems just.

## COUNT VII
### (State Statutory and Common Law Unfair Competition)

37.    Plaintiff restates and realleges the allegations of paragraphs 1-36 as if fully set forth herein.

38.    Through the foregoing conduct, including without limitation the deceptive manipulation of online ratings through the misrepresentation of the flow rates of Defendant's products and the sale of products with excessively high flow rates, Defendant has committed common law unfair competition.

39.    Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorneys' fees, costs, punitive damages and any other relief the court deems just.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

I.      That Defendant, its officers, agents, servants, employees, attorneys, privies, subsidiaries, divisions, successors and assigns, and all persons and organizations in active concert, participation or combination with any of the foregoing be permanently enjoined from and/or Ordered to:

A.  Cease making or employing any false or misleading statements regarding the flow rate, efficiency or water pressure of its products;

B.  Cease making or employing any false or misleading statements to the effect that its products sold with a hose feature conical brass hose nuts or allow for tools-free installation;

C.  Cease selling showerheads with a flow rate in excess of 2.5 gpm at 80 psi; and

10

    D. Cease selling showerheads for a period sufficient to correct for any gains in market share attributable to the conduct at issue in this lawsuit.

II.    That Plaintiff obtain the following relief:

    A. An accounting and disgorgement of all profits Defendant has gained through the conduct complained of herein;

    B. Compensatory damages in an amount to be determined at trial;

    C. Treble damages;

    D. Reasonable attorneys' fees and costs;

    E. Punitive damages in an amount sufficient to deter future deceptive conduct on the part of Defendant or others similarly situated, but in no event less than $5,000,000; and

    F. Any other relief in Plaintiff's favor that the court deems just and proper.

Dated: April 18, 2016

Respectfully submitted,

The Law Office Of
JASON B. LATTIMORE, ESQ. LLC

By  s/ Jason B. Lattimore
    Jason B. Lattimore
    55 Madison Avenue, Suite 400
    Morristown, NJ 07960
    Telephone: (973) 998-7477
    Facsimile:  (973) 264-1159

    *Attorneys for Plaintiff*
    *Interlink International Products, Inc.*

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable by jury.

Dated: April 18, 2016                        Respectfully submitted,

                                             The Law Office Of
                                             JASON B. LATTIMORE, ESQ. LLC

                                             By  s/ Jason B. Lattimore
                                                 Jason B. Lattimore
                                                 55 Madison Avenue, Suite 400
                                                 Morristown, NJ 07960
                                                 Telephone: (973) 998-7477
                                                 Facsimile:  (973) 264-1159

                                                 *Attorneys for Plaintiff*
                                                 *Interlink International Products, Inc.*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned hereby certifies that, to the best of his knowledge, this matter is not the subject of any other action pending in any court, or any pending or contemplated arbitration or administrative proceeding.

Dated: April 18, 2016                        Respectfully submitted,

                                             The Law Office Of
                                             JASON B. LATTIMORE, ESQ. LLC

                                             By  s/ Jason B. Lattimore
                                                 Jason B. Lattimore
                                                 55 Madison Avenue, Suite 400
                                                 Morristown, NJ 07960
                                                 Telephone: (973) 998-7477
                                                 Facsimile:  (973) 264-1159

                                                 *Attorneys for Plaintiff*
                                                 *Interlink International Products, Inc.*